# KENNEDY PARALEGAL SERVICE

518 6th Street SW
Waseca, MN 56093
608.632.2345
kennedyhein@gmail.com

December 21, 2017

U.S. Bankruptcy Court
300 S. 4th Street, Suite 301
Minneapolis, MN 55415

      RE:    Chapter 7—Matthew James Halla/Brooke Amanda Halla
              Case No. 17-33571

Dear Clerk:

Pursuant to a Notice of Deficiency (copy enclosed), I have enclosed amended Reaffirmation Agreements submitted using the correct form:

1. Reaffirmation Agreement with Affinity Plus Credit Union (2008 Chrysler Aspen)
2. Reaffirmation Agreement with Affinity Plus Credit Union (2006 Dodge Dakota)
3. Reaffirmation Agreement with Affinity Plus Credit Union (Cross-collateralized line of credit)

Very truly yours,

*Linda Kennedy*
Linda Kennedy

Enclosures
cc: Matthew and Brooke Halla

**Form 240A - Reaffirmation Agreement (1/07)**

☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
### District of Minnesota

In re Matthew James Halla, Brooke Amanda Halla
Debtor

Case No. 17-33571-WJF
Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)
☑ Part B: Reaffirmation Agreement
☑ Part C: Certification by Debtor's Attorney
☑ Part D: Debtor's Statement in Support of Reaffirmation Agreement

**Name of Creditor:** Affinity Plus Federal Credit Union

☑ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

### PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

**1. DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm: $ 3,957.32

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A - Reaffirmation Agreement (Cont.)**                                    2
**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: __12.75__ %.

*--- And/Or ---*

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: __n/a__ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: __n/a__ %.

*--- And/Or ---*

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: __n/a__ %. If different simple interest rates apply to different balances included in the amount reaffirmed,

**Form 240A - Reaffirmation Agreement (Cont.)** 3

the amount of each balance and the rate applicable to it are:
$_____ @ _____ %;
$_____ @ _____ %;
$_____ @ _____ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Cross-Collateralized Revolving Line of Credit | $4,000.00 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $ 60.00 is due on 12-08-2017 (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: _____ (number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

**Form 240A - Reaffirmation Agreement (Cont.)**                                          4

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. [Abrogated]

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**Form 240A - Reaffirmation Agreement (Cont.)**                                    5

### YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**Form 240A - Reaffirmation Agreement (Cont.)** 6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

    Cross-Collateralized Revolving Line of Credit

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:
    n/a

SIGNATURE(S):

Borrower:

Matthew James Halla
_____
(Print Name)

*Matthew James Halla*
_____
(Signature)
Date: 12/20/17

Co-borrower, if also reaffirming these debts:

Brooke Amanda Halla
_____
(Print Name)

*Brooke Halla*
_____
(Signature)
Date: 12/20/17

Accepted by creditor:

Affinity Plus Federal Credit Union
_____
(Printed Name of Creditor)

175 W. Lafayette, St. Paul, MN
_____
(Address of Creditor)

_____
(Signature)

Derrick N. Weber, Attorney
_____
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

12/13/2017

**Form 240A - Reaffirmation Agreement (Cont.)**            7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: _____

Signature of Debtor's Attorney: _____

Date: _____

**Form 240A - Reaffirmation Agreement (Cont.)**                                         8
**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, __OR__, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 __and__ your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 5,905.70 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 5,747.50, leaving $ 158.20 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____
_____.

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _Matthew James Hulla_
(Debtor)
_Ursula Hulla_
(Joint Debtor, if any)
Date: _12/20/17_

*— Or —*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)

_____
(Joint Debtor, if any)
Date: _____

DocuSign Envelope ID: 3B46223D-8A3E-4B2D-B608-46788F824C4D


**AFFINITY PLUS**
FEDERAL CREDIT UNION

175 W. Lafayette Frontage Road
St. Paul, MN 55107
(651) 291-3700
(800) 322-7228

TRUTH-IN-LENDING DISCLOSURE
STATEMENT - LINE OF CREDIT

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| Brooke Halla | |
| CO-BORROWER'S NAME | DATE |
| Matthew J Halla | 03/03/2014 |

This Truth-in-Lending Disclosure Statement provides important information regarding the rates and terms of your Line of Credit. This Statement is incorporated into and becomes a part of your Credit Agreement. Please keep this attached to your Agreement.

The following applies to your Personal Line of Credit:

### INTEREST RATES and INTEREST CHARGES:

| Annual Percentage Rate | 12.75 % |
|---|---|
| Paying Interest | We will begin charging interest on the transaction date. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $ 0.00 |

### FEES:

| Fees to Open or Maintain your Line: | |
|---|---|
| - Annual Fee: | None |
| - Application Fee: | None |
| - Loan Fee: | None |
| **Transaction Fees** | |
| - Loan Fee: | None |
| **Penalty Fees** | |
| - Late Payment: | $15.00 if your payment is late 15 days or more |
| - Over-the-Credit Limit: | None |
| - Returned Payment: | None |

**How We Will Calculate Your Balance:** We use a method called the "Daily Balance" method. See your Credit Agreement for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your Credit Agreement.

**OTHER IMPORTANT DISCLOSURES:**
Rates are subject to change upon written notice and according to applicable law.

**Daily Periodic Rate:** The corresponding daily periodic rate is: 0.03493151 %.

**Minimum Payment Requirement:** 1.50 % of the outstanding balance, subject to a minimum of $ 15.00 .

**Credit Limit:** $ 700.00

9001 LASER FPDF FI15567 5-2011

COPYRIGHT 2009 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: 3B46223D-8A3E-4B2D-B608-46788F824C4D



**AFFINITY PLUS FEDERAL CREDIT UNION**
175 W. Lafayette Frontage Road
St. Paul, MN 55107
(651) 291-3700
(800) 322-7228

**REVOLVING LINE OF CREDIT - CREDIT AGREEMENT AND SECURITY AGREEMENT**

| BORROWER'S NAME AND ADDRESS | | | ACCOUNT NUMBER |
|---|---|---|---|
| Brooke Halla | 612 19th Ave NE | Waseca, MN 56093 | 98 |
| CO-BORROWER'S NAME AND ADDRESS | | | DATE |
| Matthew J Halla | 612 19TH AVE NE | WASECA, MN 56093 | 03/03/2014 |

"You", "Your" and "Borrower", means any person who executes this Agreement by signing the Agreement, or any person who endorses a proceeds check or otherwise accepts, accesses, or uses funds drawn on this Line of Credit. "We", "us", "our" or "Credit Union" means the Credit Union named above.

**How this Line of Credit Works.** This Revolving Line of Credit ("Line") is a quick and convenient way for you to obtain a loan when you need it. You may take out several different loans (called "advances") under the Line or its various subaccounts (if any). The amount of credit available to you will replenish as you pay down your outstanding balance.

**Binding Contract.** This Revolving Line of Credit Agreement, which includes the Credit Agreement, Security Agreement, Truth-in-Lending Statement, and any Advance Receipt or Advance Request form that we may provide ("Agreement"), is a binding legal contract that will govern the terms of all advances that you obtain under the Line. You only sign once to open the Line; thereafter, you may request additional advances without signing any paperwork unless requested by us.

By signing below, you are:
1. **Agreeing to repay all advances you take.** All advances you take under the Line must be paid back, even if you don't sign any paperwork at the time of the advance.
2. **Pledging your shares and deposits in the Credit Union.** If you default, we may apply the shares and deposits in your accounts to the amount you owe us. We may also prevent you from withdrawing shares and deposits if you are in default. Please see the Security Agreement for complete details.
3. **Agreeing to Cross-Collateralization:** All other collateral you have pledged for any other loan with us (except your home and household goods) will also secure this Line. **Release of Lien:** We will not release a lien on any of the collateral you have pledged under other loans with us if you are delinquent or in default on your Line. For example: if you are in default of your Line, we will not release our lien on your vehicle loan, even if the vehicle loan is paid in full. Please see the Security Agreement for complete details.
4. **Authorizing us to obtain credit reports:** You authorize us to obtain a credit report or other credit information in connection with this Line. We may periodically obtain and review your credit information without notice to you for as long as the Line is open and we may use that information to change the terms or rates of the Line or terminate the Line, or to help collect any amounts under this Line, or for any other permitted purpose under applicable law.

**Interest Rates and Fees.** The rates and fees that apply to your Line are disclosed on the Truth-in-Lending Statement and any Advance Receipt or Advance Request form that we may provide.

**Purchase of Optional Products:** If offered, you may apply for optional loan protection products such as credit insurance or debt protection. These products are voluntary and are not required to obtain a loan from us. The premium or fee for the product(s) will be added to the outstanding balance and becomes part of your minimum monthly loan payment. We will retain a portion of this fee as compensation for providing this service. Purchase of optional products may extend the time it takes to pay off your outstanding balance(s). Once you purchase credit insurance or debt protection, all subaccounts under the Line will be covered, unless you tell us otherwise.

---
**TRUTH-IN-LENDING STATEMENT**
---

*See separate Truth-in-Lending Statement.*

---
**BORROWER'S ACKNOWLEDGEMENT & SIGNATURES**
---

By signing below, you understand and agree as follows:

**Acknowledgement:** By signing below, you acknowledge that you have read, understand and accept the terms and conditions of the Revolving Line of Credit - Credit Agreement and Security Agreement, and Truth-in-Lending Statement. You acknowledge that you have received copies of these documents. You also agree to be bound by any and all Advance Receipts that may be provided and understand that by endorsing any advance proceeds check, or by otherwise accepting, using or accessing your advance proceeds, you are bound to the aforementioned documents.

**Loan Terms:** By accepting, using, or accessing the amounts advanced, you are agreeing that the advance is a loan in the amount disbursed to you, at the Annual Percentage Rate disclosed to you, even though you are not signing any documents at the time of the advance. If you dispute the amount disbursed or the rate disclosed, you agree to immediately contact us and return the full amount disbursed. Otherwise, you shall be contractually bound to re-pay the full amount disbursed, together with interest, late fees, and all other fees incurred in connection with the advance.

**Negative Information Notice:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying information.

| BORROWER'S SIGNATURE | DATE | CO-BORROWER'S SIGNATURE | DATE |
|---|---|---|---|
| DocuSigned by:<br>X *Brooke Halla* | 3/3/2014 | DocuSigned by:<br>X *Matthew Halla* | 3/3/2014 |

DocuSign Envelope ID: 3B46223D-8A3E-4B2D-B608-46788F824C4D

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| Brooke Halla | 98' |

## CREDIT AGREEMENT

**Agreement to Terms and Promise to Pay:** By signing this Agreement or any advance proceeds check, and/or by accepting, using, or accessing any proceeds under this Line, you agree to the terms and conditions of the Revolving Line of Credit - Credit Agreement and Security Agreement, Truth-in-Lending Statement, and all Advance Receipts, or similar document that we may provide, and any future amendments thereto, and promise to pay all amounts due.

**Endorsement of Proceeds Check:** By endorsing an advance proceeds check, you are agreeing to the terms of this Agreement and any Advance Receipt, and are granting a security interest in the collateral, if any, described in the Advance Receipt. The terms of the advance proceeds check and the Advance Receipt, including the collateral description, are subject to the terms of the Agreement.

**How to Compute the Interest Charge:** The Interest Charge begins to accrue on the date of each advance and accrues for each day the balance remains unpaid. The unpaid balance for each day is multiplied by the applicable daily periodic rate to determine the Interest Charge for that day. The sum of these daily charges is the Interest Charge. The unpaid balance is the outstanding balance at the close of business after all transactions have been entered.

**Access to Credit Line:** You may request advances in any manner allowed by us. We may refuse to make any advance.

**Late Fees and Other Charges:** You agree to pay all fees and charges imposed under the Line in the amount(s) disclosed on the Truth-in-Lending Statement, which fees may increase from time to time. Such fees shall be added to your outstanding balance and your minimum payment may increase or your loan term may be extended.

**Overdraft Protection:** If you request Overdraft Protection, any overdrafts on your checking account will be added to your Line, even if the owner or authorized user of the checking account who causes the overdraft is not a borrower on the Line.

**Advance Receipts:** If you take an advance under this Line, you may receive an Advance Receipt or similar document confirming the transaction and describing any collateral given as security for that advance. The Advance and collateral are governed by and subject to the terms of the Agreement.

**Payments:** The minimum monthly payment and due date will be set and disclosed at the time each advance is made. You may pay the outstanding balance in full or pay more than the minimum due at any time without penalty. However, minimum payments are required for each billing cycle as long as any balance exists.

**Skip Payment:** If we make a skip payment option available, you may skip making your payment(s) for certain month(s). If you choose this option, interest will continue to accrue, but no late payment charges will be imposed during the skip period. All credit terms applicable immediately prior to the skip period will again apply once the skip period has expired.

**Default:** You shall be considered in default if we should, in good faith, believe that prospect of payment, performance, or our security interest in, or realization, of the collateral is impaired. You shall also be in default if: (1) you break any promise made under this Line; (2) you do not use the loan proceeds for the purpose stated in your advance request; (3) you die; (4) you file a petition in bankruptcy, insolvency, or receivership or are put involuntarily into such proceedings; (5) if the collateral is lost, damaged or destroyed, or if it is levied against, attached, garnished, or seized for any reason under any authority; (6) you do not make your required payments on time; (7) anyone is in default of any security agreement given in connection with the Line; (8) you commit fraud or make any false or misleading statements in connection with this Line; (9) you are in default of any other loan or security agreement you have with us; (10) you use the Line for any illegal purpose or transaction as determined by applicable law. Any one of the foregoing events shall evidence a reasonable belief that prospect of payment, performance or realization of the collateral is impaired.

**Actions Upon Default:** If you default, we may declare all amounts immediately due and payable, and you must immediately pay us the total unpaid balance, as well as the Interest Charge to date, any late charges and all collection costs permitted under law. The balance in default shall bear interest at the highest rate permitted by applicable law. If your state law requires a notice of default and an opportunity to cure that default, these rights will be afforded to you before we exercise our remedies.

**Costs of Collection:** You shall pay all costs incurred by us in collecting any amount you owe or in enforcing or protecting our rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, casualty insurance, and reasonable attorney's fees for any action taken by an attorney who is not our salaried employee in order to collect this loan or preserve or protect our rights and remedies, including, without limitation, pre-suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of our rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. *For Alabama borrowers:* attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. *For Georgia borrowers:* attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow.

**Borrower Responsibility:** You must notify us of any change in your name, address, employment, financial situation or credit standing, and you must provide us any additional financial information we request. To prevent identity theft, you may be required to verify any change in your address. You shall not request an advance if you know or should have known that you cannot pay it back.

**Joint Lines:** If this Line has more than one borrower, each of you is individually and jointly responsible for paying all amounts owed. We can enforce our rights against one or all of you. If you give us inconsistent instructions, we can refuse to follow those instructions or follow the instruction of our choosing. Unless our written policy requires all of you to sign for an advance, each of you may obtain advances individually and each agrees to repay advances made to the other(s). Any notice mailed to one shall be considered notice mailed to all. Any of you can remove yourself from responsibility as a co-borrower by notifying us in writing, unless such removal would violate our policy or regulations. In such a case the Line may be terminated. Removing a Borrower or terminating the Line will not relieve any of you from joint or several liability for any obligations already incurred.

**Termination:** This Line may be terminated (1) upon adverse re-evaluation of your creditworthiness; (2) If you should fail to meet the terms of the Line; (3) at our option, or your option, upon written notice. Termination will not affect your obligation to pay the balance outstanding prior to termination.

**Unlawful Transactions:** Your Line shall not be used to make or facilitate any illegal transaction(s); and any such use will constitute an event of default. We shall not have any liability for any such use by you or any authorized user(s). You shall indemnify and hold us harmless from any suits, liability, damages or adverse action of any kind that results directly or indirectly from such illegal use.

**Change in Terms:** We may change the terms of this Line at any time in accordance with applicable law. Increases in the interest rate will apply to future advances and, subject to applicable law, unpaid balances.

**Severability:** In case any provision of this Agreement is held invalid, it shall be enforced as if such provision was never included.

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| Brooke Halla | 9f |

## CREDIT AGREEMENT

**No Waiver:** We may waive or delay exercising any of our rights without losing our ability to exercise those rights in the future.

**Governing Law:** This Agreement shall be construed and enforced according to the laws of the State in which our headquarters are located.

**Final Agreement:** This written agreement is a final expression of the agreement between you and us, and may not be contradicted by evidence of any oral agreement.

**State Notices:**

**NOTICES TO WISCONSIN BORROWERS:** (1) If you are married and are extended individual credit, Wis. Stat. 766.56(3)(b) requires us to notify your spouse of the extension of credit. If we receive written notice of termination from your spouse pursuant to Wis. Stat. Section 766.565(5), we may declare you in default of the Line and call the entire extension of credit due and payable notwithstanding Wis. Stat. Sections 425.103 and 425.105. If the Line is called due and payable, you may have certain rights to cure the default. (2) Additionally, no provision of a marital property agreement, a unilateral agreement under Wis. Stat. 766.59, or a court decree under Wis.Stat. 766.70 adversely affects our interests unless prior to the time the credit is extended, we are furnished with a copy of the agreement or statement, or have actual knowledge of the adverse provision when the obligation is incurred.

**NOTICE TO CALIFORNIA RESIDENTS:** By signing this Agreement, you specifically agree that we may access the records of the California Department of Motor Vehicles from time to time to obtain your current mailing address, and by so agreeing, you are specifically waiving your rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

***NOTICE TO TEXAS BORROWERS - APPLIES TO VARIABLE RATE LOANS:*** NOTICE TO CONSUMER: UNDER TEXAS LAW, IF YOU CONSENT TO THIS AGREEMENT, YOU MAY BE SUBJECT TO A FUTURE RATE AS HIGH AS 24 PERCENT PER YEAR.

***For Missouri Residents:*** **Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

***For Vermont Residents:*** **NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THE LINE. IF THE BORROWER DOES NOT PAY, WE HAVE A LEGAL RIGHT TO COLLECT FROM YOU.**

## BILLING RIGHTS

**Your Billing Rights: Keep this Document for Future Use**

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at the address(es) listed on your statement.

In your letter, give us the following information:
1. Your name and account number.
2. The dollar amount of the suspected error.
3. If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

DocuSign Envelope ID: 3B46223D-8A3E-4B2D-B608-46788F824C4D

| BORROWER'S NAME | ACCOUNT NUMBER |
|---|---|
| Brooke Halla | -- |

## SECURITY AGREEMENT

**Security Interest; CONSENSUAL PLEDGE of SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** By signing the Agreement, and/or by accessing, using, or otherwise accepting any funds, accounts or services, **you grant us, and we impress, a lien on your shares and deposits in the Credit Union.** We also have similar statutory lien rights in your shares and deposits under the Federal Credit Union Act and/or applicable state law, as well as the common law right to set-off and administrative freeze. "Shares," "share accounts," "deposits," and "deposit accounts" means any and all funds, regardless of the source of those funds, in any joint or individual account held and whether your interest in the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which you do not have vested ownership interest. IF YOU HAVE A CREDIT CARD WITH US, OUR RIGHTS ALSO APPLY TO THAT CREDIT CARD ACCOUNT.

If you default, we may apply the funds in your share accounts and deposit accounts to any obligations you owe us, without any legal process, court proceeding or any notice to any owner of the affected share and deposit accounts, unless applicable law so requires. **You specifically agree that we have the right to place an administrative freeze on any of your share and deposit accounts subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. These rights are multiple and we can exercise one or all of them.**

**Share- or Certificate-Secured Subaccounts:** If you have a Share-Secured or Certificate-Secured subaccount, you must maintain an amount in the pledged account at least equal to your credit limit. If you fail to do so, you will be in default. Certificates must be renewed as long as a balance remains on a Certificate-Secured subaccount.

**CROSS-COLLATERALIZATION:** Property and/or shares and deposits given as security under this Line or for any other loan you have with us will secure any and all advances under this Line as well as any account owner's joint or individual obligations to us, now or in the future, whether direct, indirect, contingent or secondary and arising from any loan or credit agreement, insufficient fund items; fees; cost, expenses, reasonable attorney's fees, or otherwise. However, property securing another debt will not secure advances under this Line if such property is your primary residence or are household goods. IF YOU HAVE A CREDIT CARD WITH US, THIS CROSS-COLLATERALIZATION CLAUSE ALSO APPLIES TO THAT CREDIT CARD.

**Release of Lien:** We will not release any lien on any collateral if you are delinquent on, or in default on this Line. For example, if you are in default of your Line, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**No Liability for Dishonor:** We shall not have any liability relating to the dishonor or other return of any check or other item occurring as a result of us exercising our lien rights or good-faith freezing of your accounts.

**Notices:** We may meet all requirements for sending you notice of any kind if we send it to you via United States mail, at your last given address. We may also meet this requirement by delivering these notices to you electronically if you have agreed to receive notices by electronic means.

**Attorney-in-Fact:** You hereby appoint us as your Attorney-in-Fact to perform any acts which we feel are necessary to protect the Collateral and our security interest. You specifically authorize us to endorse on your behalf any check made payable to both you and us.

**Survival of Obligations:** This security agreement not only binds you, but your executors, administrators, heirs and assigns.

9006 5-2011

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:
MATTHEW JAMES HALLA
BROOKE AMANDA HALLA

Case No: 17-33571 – WJF

Debtor(s)

Chapter 7 Case

## NOTICE OF DEFICIENCY

On 12/13/2017, a reaffirmation agreement between the debtor and AFFINITY PLUS FEDERAL CU was filed in this case.

The reaffirmation agreement filed was deficient in the following respects:

☑ The agreement was not submitted on the correct form; (Local Form 4008-1 Reaffirmation Agreement)
For the correct version of the form, see www.mnb.uscourts.gov/local-forms

☐ The reaffirmation agreement cover sheet was not submitted; (Official Form 427)
For the correct version of the form, see www.mnb.uscourts.gov/local-forms

☐ The reaffirmation agreement cover sheet was not completed;

☐ The undue hardship checkbox was not completed;

☐ Part D of the reaffirmation agreement was not completed; or

☐ Other (described below):

No action, including any hearing, judicial review or approval required under 11 U.S.C. § 524, will be taken in connection with this agreement unless and until all deficiencies have been corrected.

Dated: 12/14/17

Lori Vosejpka
Clerk, United States Bankruptcy Court

By: jen
Deputy Clerk

mnbreafd 6/16

004429                              8490004433010